UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:18-CR-91-PPS |
| ) | |
| JASON JAY CHEEK, ) | |
| ) | |
| Defendant. ) | |

**<u>OPINION AND ORDER</u>**

This matter is before me on Cheek's "Motion for Resentencing Pursuant to 18 U.S.C. § 3582(c)(1)(A), 18 U.S.C. § 4205(g) And The Cares Act" [DE 38]. Cheek is a 43 year old male currently incarcerated at the Coleman Low federal correctional institution in Sumterville, Florida. In accordance with my order dated April 17, 2020, Federal Defender Roxanne Johnson filed her appearance on behalf of Cheek. Subsequently, Ms. Johnson filed a motion to withdraw which I granted. [DE 42, 43.] The government filed a response to the motion [DE 44]. Cheek had until June 19, 2020, to file a reply but to date, no reply has been filed.

Let's start by reviewing the procedural background of this case. On August 26, 2019, Cheek pleaded guilty to all three charges in the indictment which charged him with three counts of bank robbery in violation of 18 U.S.C. § 2113(a). [DE 8, 22, 25.] Cheek robbed three banks - one on June 5, 2018, in Michigan City, and two on July 31, 2018, in Michigan City and Portage. During the first robbery, he pushed a female customer aside, placed a black canvas bag on the counter, and warned the teller that if

she pushed the red button he would shoot a customer. [PSR, DE 29, ¶ 10.] During the second robbery, Cheek told the teller if she did not hurry, he would start shooting. [*Id.* ¶ 11.] And during the third robbery, Cheek told the teller to hurry up because he didn't want to shoot her. [*Id.* ¶ 12.] Cheek said he carried a BB gun that looked like a real firearm in all three robberies. [*Id.* ¶ 13.] Cheek has a light criminal history category of I. [*Id.* at 8-9.] Cheek had a troubled childhood and has a history of mental health issues. [*Id.* at 10-12.] On November 18, 2019, I sentenced Cheek to 63 months imprisonment followed by 2 years of supervised release. [DE 34.]

In support of his motion, Cheek argues that he smoked for over twenty years, he suffers from asthma and allergies, his father died of emphysema, and his grandfather died of lung cancer. [DE 38 at 3.] He believes his underlying health conditions put him at risk for complications if he were to contract COVID-19 and he asserts that the prison has not implemented any tests for the virus and does not have any ventilators. [*Id.* at 4.]

The instant request is for compassionate release under the First Step Act. Cheek bears the burden of showing he is entitled to compassionate release. *See United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020). Compassionate release is "an extraordinary and rare event." *United States v. Mangarella*, 3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

Before I get into the merits of Cheek's claim, I need to first look into the exhaustion requirement. The First Step Act provides that I can consider a motion directly from the defendant after he "has fully exhausted all administrative rights to

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Cheek's pro se motion does not indicate that he applied to the BOP for compassionate release and the government submits that the filings of the federal defender's office also do not show that he requested compassionate release from the BOP. [DE 44 at 3.] As such, Cheek has not satisfied the exhaustion requirement. Courts across the country are struggling with the issue about whether the exhaustion requirement may be excused. "[M]ultiple courts have concluded that a district court cannot entertain a [compassionate release] motion unless a defendant has exhausted his administrative remedies – even in the face of the COVID-19 pandemic." *United States v. Albertson*, No. 1:16-cr-00250-TWP-MJD, 2020 WL 1815853, at *2 (S.D. Ind. Apr. 8, 2020) (collecting cases). Yet other courts have found the exhaustion requirement can be waived. *See, e.g., United States v. Witter*, No. 18-cr-77-wmc-4, 2020 WL 1974200, at *5 (W.D. Wis. Apr. 24, 2020) (collecting cases). Setting aside this issue, and without commenting at this time on whether a failure to exhaust should be excused, even if I consider Cheek's request on the merits, it should still be denied. *See, e.g., United States v. Wolfe*, 1:15-cr-169-TWP-DML, 2020 WL 2615010, at *2 (S.D. Ind. May 22, 2020) (putting "to the side the thorny issue of exhaustion to tackle the easier issue" of whether defendant has presented extraordinary and compelling reasons to warrant a sentence reduction).

      The First Step Act provides that the Court may reduce the term of imprisonment

3

after considering the factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In other words, the compassionate release statute directs me to make three considerations: (1) whether a reduction is consistent with the factors listed in section 3553(a); (2) whether extraordinary and compelling reasons warrant a sentence reduction; and (3) whether a reduction would be consistent with the Sentencing Commission's policy statements. All three considerations weigh against release in this case.

The section 3553(a) factors, which are well-known by this point, include the nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. § 3553(a). Before I address whether "extraordinary and compelling reasons" warrant a reduction in Cheek's sentence, I will look to the factors set forth in section 3553(a). Cheek committed three bank robberies in two months, making death threats to the tellers each time. The serious nature of Cheek's offenses do not weigh in favor of his early release. While I have no way of actually knowing, I believe that Cheek could still pose a danger to the public. With his arrest in August 2018, and a projected release date of January 22, 2023, he has only

4

served a little more than half of his time in custody. [DE 44 at 2.] The Section 3553(a) factors of punishment, deterrence, and promotion or respect for the law do not warrant release in this case. *See, e.g., United States v. Pena*, No. 2:15-CR-72-PPS, 2020 WL 3264113, at *3 (N.D. Ind. June 17, 2020) (denying request for compassionate release based in part on the severity of the offense); *United States v. Urso*, No. 03-CR-1382 (NGG), 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019) (the court couldn't find that the defendant, a high-ranking mobster, no longer presented a danger to the community).

In turning to whether there are "extraordinary and compelling reasons [that] warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" 18 U.S.C. § 3582(c)(1)(A), I note that the pertinent policy statement is set forth in the United States Sentencing Guidelines (USSG) § 1B1.13. This would allow me to reduce Cheek's sentence if I determined extraordinary and compelling reasons warrant the reduction, Cheek is not a danger to the safety of any person or the community, and the reduction is consistent with the policy statement. USSG § 1B1.13. The Sentencing Commission also provided specific examples of what constitutes an extraordinary and compelling circumstance, which include, *inter alia*: the defendant is suffering from a terminal illness; the defendant is suffering from a serious physical or medical condition; the death or incapacitation of the caregiver of the defendant's minor child or minor children or upon the incapacitation of the defendant's spouse/registered partner when the defendant would be the only caregiver for that spouse/registered partner; or other reasons as

determined by the Director of the BOP. USSG § 1B1.13 cmt. n. 1.

Here, Cheek's health conditions do not qualify as extraordinary or compelling reasons to reduce his sentence. Cheek argues that his asthma, smoking history, and severe allergies cause him "constant respiratory distress" in prison. [DE 38 at 3.] Cheek's medical records, submitted by the government, confirm that Cheek was diagnosed with asthma in his childhood and he was prescribed an Albuterol inhaler for his asthma on January 14, 2020. [DE 44-3 at 1, 6.] The note from January 2020 states that Cheek's asthma is "under control." [*Id.* at 4.] The records also show he received treatment from the BOP in April after complaining of more labored breathing and having to use his Albuterol inhaler 4-5 times daily. [*Id.* at 2-3.] A physical exam conducted on April 16, 2020, revealed "mild to moderate expiratory wheezes bilaterally," so he was prescribed Mometasone Furoate 220 MCG/Inh and told to take one puff daily to lessen his need to use the Albuterol inhaler. [*Id.* at 2-3.] Two weeks later, Cheek reported "[n]o worsening or shortness of breath since [being] evaluated [on] 4/16/20." [*Id.* at 1.] Thus, it seems that the BOP has been able to manage and treat Cheek's asthma to date. There are no records of any severe asthma attacks or severe respiratory distress in Cheek's medical records. There is nothing about Cheek's asthma and allergies in general which would constitute an extraordinary or compelling reason to reduce Cheek's sentence. *See, e.g., United States v. Carpenter*, No. 2:14-cr-309-GEB, 2019 WL 7631396, at *2 (E.D. Cal. Dec. 23, 2019) (denying compassionate release where the records "evince that [the prisoner's] medical conditions are not life-threatening and

6

should not limit her self-care ability."); *United States v. Ayon-Nunez,* No. 1:16-CR-130-DAD, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020) (quotation omitted) (rejecting compassionate release reasoning "[t]o be faithful to the statutory language requiring extraordinary and compelling reasons, it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release."); *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D. N.M. 2019) (quotation omitted) ("In exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release due to medical conditions as . . . a rare event.").

The real question is whether Cheek's health conditions in addition to COVID-19 justify compassionate release. Even considering Cheek's asthma, allergies, and family history in the midst of the COVID-19 pandemic, he still does not meet the extraordinary and compelling standard in this case. According to the Centers for Disease Control and Prevention (CDC), people with certain underlying medical conditions, including moderate to severe asthma, "might be at an increased risk for severe illness from COVID-19." Https://www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed June 29, 2020). As the court noted in *United States v. Polnitz*, No. 17-cv-201-pp, 2020 WL 3129643, at *4 (E.D. Wis. June 12, 2020), the American Academy of Allergy Asthma & Immunology states that "currently there is no evidence of increased infection rates in those with asthma," and that "although the Centers for Disease Control and Prevention states that patients

7

with moderate-severe asthma could be at greater risk for more severe disease, there is no published data to support this determination at this time." (Citing https://www.aaaai.org/conditions-and-treatments/library/asthma-library/covid-asthma.)

In this case, Cheek is being treated for his asthma and it seems largely controlled with medication, so I'm unsure whether his condition would be considered "moderate to severe" asthma.  But even if it was, according to the government's submission on June 9, 2020, there are no inmates at Coleman that have tested positive and only two staff members who have tested positive for COVID-19. [DE 44 at 6.] I realize that these numbers can constantly change, and may not be entirely accurate, but I must consider the evidence in front of me that there are no inmates at Coleman that have tested positive yet.  As I stated in another case denying a motion for compassionate release filed by a 50 year-old man who reported a history of respiratory ailments, including bronchitis, asthma, pneumonia, and used an inhaler in the past but was housed in a BOP facility with no reported cases of COVID-19: "[h]is fears of possibly contracting the virus, and of possibly experiencing severe complications if he does, are simply not 'extraordinary and compelling' reasons to support his release at this point in time . . . ." *United States v. Culver*, 2:16-cr-89-PPS-APR, DE #19 at 3 (N.D. Ind.); *see also United States v. Miller*, No. 18-cr-30034, 2020 WL 2093370, at *3 (C.D. Ill. May 1, 2020) (denying motion for compassionate release noting defendant's asthma is controlled with medication).

8

Similarly, I do not think Cheek's concern about getting COVID-19 in prison justifies compassionate release in this case. Cheek cites cases that have granted compassionate release, but there are a number of cases across the country that have likewise denied motions for compassionate release. The Third Circuit explained that, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Indeed, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13." *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *see also United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("the mere presence of COVID-19 in a particular prison (or the BOP generally) cannot justify compassionate release - if it could, every inmate in that prison could obtain release."); *United States v. Collins*, No. 14-cr-30038, 2020 WL 2301217, at *2 (C.D. Ill. May 8, 2020) (denying motion for compassionate release, recognizing "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that makes him more susceptible to the disease.").

While I am certainly sympathetic with Cheek's situation and his concern about potentially becoming infected with COVID-19 from someone else at the facility, Cheek

9

has not demonstrated that his risk is significantly higher than if he were to be released, or that the facility is unequipped to provide appropriate medical treatment if he were to become sick.  He has therefore not shown that release is necessary for the compelling reason of protecting his life.  Cheek requests home confinement [DE 38 at 12], but he gives no further details and there is no indication that he would be safer living in society than he is in prison.

Issues surrounding the COVID-19 pandemic are changing rapidly and new developments are occurring almost every day.  At this point, based upon all the facts before me, I do not think that Cheek's sentence should be reduced and he should be released for home confinement.  If factual developments warrant a reconsideration, Cheek is free to exhaust his administrative remedies again, and file a new motion under § 3582(c)(1)(A).

## Conclusion

Despite the severity of the COVID-19 pandemic, Cheek's "Motion for Resentencing Pursuant to 18 U.S.C. § 3582(c)(1)(A), 18 U.S.C. § 4205(g) And The Cares Act" [DE 38], is DENIED.  Cheek has not shown the factors under section 3553(a) warrant release or that extraordinary and compelling reasons warrant such a reduction under § 3582(c)(1)(A).

SO ORDERED.

ENTERED: June 29, 2020.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT